83 F.3d 426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Candis CASTLE-SCOTT, Brad Bakken, Barry Brockmann, and
Eugene Crotty, individually and on behalf of a
class of people similarly situated,
Plaintiffs-Appellants,
v.
The INTERNATIONAL LONGSHOREMAN'S AND WAREHOUSEMEN'S UNION,
LOCAL 19; the International Longshoreman's and
Warehousemen's Union (International); and the Pacific
Maritime Association, Defendants-Appellees
 No. 95-35327.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1996.
Decided April 23, 1996.
 
 1
 Before: HALL and TROTT, Circuit Judges, and RAFEEDIE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 Introduction
 
 3
 This is a class action lawsuit brought on a "hybrid" theory of breach of the duty of fair representation against the labor union and breach of the collective bargaining agreement against the management. Appellants are longshoremen employed on an as-needed basis, and Appellees are the labor union and the maritime association of employers. The district court granted Appellees' motion for summary judgment on all causes of action on the grounds that Appellants had failed to exhaust the grievance procedure of the agreement and that there were no disputes of material facts as to the merits of the action. We agree with the district court and affirm.
 
 Discussion
 I. Merits of the Claim
 A. Duty of Fair Representation
 
 4
 To establish that ILWU breached its duty of fair representation, Appellants must prove that the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903 (1967). A breach of the duty of fair representation occurs if the union "ignores a meritorious grievance or processes it in a perfunctory manner." Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1446 (9th Cir.1994). A union's exercise of judgment cannot be arbitrary, but it may still constitute bad faith. Id. at 1447-48.
 
 
 5
 The district court granted summary judgment on the ground that Appellees had in fact implemented quarterly reviews and thus had breached neither the duty of fair representation nor the contract itself. However, Appellants' Complaint alleged other grounds for breach of the duty of fair representation, and the district court did not appear to consider these.[1] Nevertheless, we find support in the record to affirm the grant of summary judgment. Smith v. Block, 784 F.2d 993, 996 n. 4 (9th Cir.1986).
 
 
 6
 The evidence in the record and analysis of each alleged breach of the duty of fair representation are as follows:
 
 
 7
 1. "Holding Up" Registration of Casuals Until Class B
 
 
 8
 Longshoremen were Advanced to Class A Status
 
 
 9
 Prior to the July 22, 1992 cutoff for the statute of limitations, the labor union, ILWU, appeared to require the advancement of twenty-five Class B longshoreman to Class A status before there could be any registration of casuals to Class B status. However, after July 22, 1992, none of the minutes of the union-management meetings revealed any such demand by ILWU.
 
 
 10
 The cases cited by Appellants do not support the position that they are entitled to present evidence of events predating July 22, 1992, as proof of a continuing breach of duty of fair representation. Once ILWU ceased demanding the advancement to Class A after July 22, 1992, it was no longer holding up registration of casuals, and was no longer breaching the duty of fair representation.
 
 2. Demanding "Up to 130" Registrations
 
 11
 On February 3, 1993, ILWU requested a registration of "up to 130 Class B" longshoremen. On February 24, the Coast Committee agreed to register thirty Class B registrants.
 
 
 12
 The gist of Appellants' claim is that ILWU requested the registration of a large number of casual longshoremen, despite the fact that the collective bargaining agreement called for small and regular additions to the registration list, and that this demand was made to block the registration of casuals.
 
 
 13
 Although Appellants claim that ILWU made this demand consistently, we find in the record only one instance after the July 22, 1992 cutoff date, on February 3, 1993. After that date, the record does not show that ILWU repeated the demand.[2]
 
 
 14
 Moreover, since it is not in dispute that ILWU requested the registration of "up to 130" once within the relevant time period, the only issue with this allegation is whether ILWU's demand, taken in the light most favorable to the appellants, creates an inference that it was made so as to hinder the registration of the casual longshoremen. We do not believe that "up to 130" supports such an inference. Because "up to 130" allows for less than 130, ILWU could not be seen as insisting upon an impracticable number of registrations. Indeed, Appellant Castle-Scott testified at her deposition that she opposed the "up to 130" figure because it could result in as little as one registration.
 
 
 15
 3. Dropping Arbitration of the Registration Issue
 
 
 16
 Finally, while the Coast Committee on September 3, 1991, directed the Port Committee to register thirty casuals, the actual registration of those casuals did not occur until May 1993. The delay was attributable to a dispute in the "hours" issue; that is, determining how to select the thirty casuals. However, the union allowed the six month time limit for bringing issues to arbitration to lapse. Appellants claim that this delay establishes a breach of the duty of fair representation.[3]
 
 
 17
 If a union exercises its judgment "as to how best to handle a grievance," it has not acted arbitrarily and will not be liable for a good faith, non-discriminatory error of judgment. Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). However, unlike in Peterson, where the plaintiff merely alleged arbitrariness, Appellants have alleged bad faith as the motive for the union's dropping of the registration issue.
 
 
 18
 The evidence that Appellants point to as suggesting bad faith on the part of Appellees are:
 
 
 19
 (1) the ILWU officials stated that they felt they had no obligations to the identified casuals and did not invite casual representatives to discuss registration issues; and
 
 
 20
 (2) the timing of the registration of the thirty casuals--in May 1993, following the filing of the complaint in this case in January 1993--suggests that the appellees followed through only due to the threat of the lawsuit, especially when the union told the casuals that it would seek arbitration of the registration issue, when in fact it failed to seek arbitration.
 
 
 21
 We conclude that this evidence does not directly support a finding of bad faith as to dropping the registration issue. There is no dispute that thirty casuals were to be registered in September 1991, that a dispute as to the calculation of hours arose, and that the matter was not submitted to arbitration, but held in abeyance pending resolution of a related hours dispute by the National Labor Relations Board (the Fenton grievance). That matter was resolved on January 28, 1993--around the same time that the appellants filed the complaint in this case.
 
 
 22
 Thus, Appellants are relying on their interpretations of the facts to support a ruling that there is a material dispute of fact as to whether the union dropped the arbitration issue in bad faith. However, it is not enough for Appellants simply to point to some evidence in the record. They must point to sufficient evidence for a jury to return a verdict in their favor. Moreover, "[i]f the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986) (citations omitted).
 
 
 23
 Although we find this issue to be close, there is no direct evidence of any bad faith on the part of the ILWU other than the statements by the union officials that they did not feel that they represented Appellants. For a jury to find in favor of Appellants on this issue, it would have to disregard all of the objective evidence submitted by the ILWU. In particular, the ILWU has submitted undisputed evidence that it waited for the resolution of the Fenton grievance to be resolved before it proceeded with registration, because previous experience had indicated that uncertainty about the calculation of hours could lead to a forced deregistration of longshoremen. Had ILWU registered casuals in a manner that ultimately differed from that determined to be proper in the Fenton grievance, there could have been an entirely new registration dispute.
 
 
 24
 This is not a matter of credibility, but rather whether the evidence is so one-sided that a reasonable jury could only return one verdict. Anderson, 477 U.S. at 250 (holding that the standard for summary judgment is similar to that for Rule 50 judgment as a matter of law). Because Appellants' argument relies so heavily on the interpretation of the facts, we find that their evidence fails to rise above a "colorable" level.
 
 B. Contractual Obligations
 
 25
 As to Appellants' claim that PMA breached its contractual obligations under the CBA, we note that this claim can succeed only if Appellants succeed on their claim that the ILWU breached its duty of fair representation. Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1447 (9th Cir.1994). Because we conclude that summary judgment is appropriately granted against Appellants on the duty of fair representation claim, we conclude that it is also appropriately granted against Appellants on the breach of contract claim.
 
 Conclusion
 
 26
 Appellants have failed to present a material dispute of fact concerning the breach of duty of fair representation claim. Therefore, we conclude that summary judgment was appropriately granted against them.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The Honorable Edward Rafeedie, United States District Court Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided for by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court dismissed all other claims by depicting them as claims raised for the first time at oral argument and as involving the exercise of judgment by the union
 
 
 [2]
 Appellants also cite to the demand made in the Second Quarter of 1992. However, that demand was made prior to July 22, 1992, and hence, even if it were wrongful action by the union, it is not within the statute of limitations
 
 
 [3]
 Appellees argue that Appellants lack standing to raise the delay in registration of the thirty casuals. Neither party analyzes the issue within the proper legal framework. However, standing is a threshold inquiry that we must resolve. Standing requires: (1) an injury in fact; (2) caused by the action complained of; and (3) redressability. Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992); Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315 (1984)
 In this case, Appellants have suffered an injury in fact--namely, the failure to be registered as Class B longshoremen. Because of that failure, they have not received a variety of benefits that would have accrued to them, such as guaranteed pay and health benefits. There is a question of whether this injury is too speculative, as the injury in fact must be concrete and particularized for standing purposes. Lujan, 112 S.Ct. at 2136. However, Appellants' injury stems from the failure to enforce the small and regular additions provision of the collective bargaining agreement. Thus, the injury appears to be sufficiently concrete.
 Next, the injury is caused by the act complained of. As noted above, the injury is caused by the failure to enforce the requisite provision of the agreement. Thus, causation is satisfied.
 Finally, the injury is redressable. A court judgment against Appellees and in favor of Appellants will recompense them for the injury caused by their not being registered.